**U.S. Department of Justice**

# Delayed Notice Search Warrants:
## A Vital and Time-Honored Tool for Fighting Crime



**September 2004**



**U.S. Department of Justice**

Office of Legislative Affairs

Office of the Assistant Attorney General

*Washington, D.C. 20530*
SEP 2 2 2004

The Honorable J. Dennis Hastert
Speaker
U.S. House of Representatives
Washington, D.C. 20515

Dear Mr. Speaker:

On July 13, 2004, the Department provided you with a copy of a recent report entitled "Report From The Field: The USA PATRIOT Act at Work." We are pleased to provide you with the enclosed supplemental report, "Delayed Notice Search Warrants: A Vital and Time-Honored Tool for Fighting Crime." This report highlights the importance and successful use of delayed notice search warrants. The report also addresses unwarranted concerns that have been raised regarding the constitutionality of this law enforcement technique that has been recognized and upheld by the courts for more than three decades.

The USA PATRIOT Act has been invaluable to the Department of Justice's efforts to prevent terrorism and make America safer while at the same time preserving civil liberties. By passing the USA PATRIOT Act, Congress provided law enforcement and intelligence authorities with important new tools needed to combat the serious terrorist threat faced by the United States. Specifically, the Act enhanced the federal government's ability to share intelligence, strengthened the criminal laws against terrorism, removed obstacles to investigating terrorists, and updated the law to reflect new technologies used by terrorists.

During the early stages of criminal investigations, including terrorism investigations, keeping the existence of an investigation confidential can be critical to its success. To keep from tipping off suspects, in appropriate circumstances the government can petition a court to approve a delayed-notice search warrant, and thus avoid tipping off the suspect to the existence of a criminal or terrorist investigation. A delayed-notice warrant is exactly like an ordinary search warrant in every respect except that law enforcement agents are authorized by a judge to temporarily delay giving notice that the search has been conducted. The USA PATRIOT Act established a uniform nationwide standard for use of delayed-notice search warrants to ensure an even handed application of Constitutional safeguards to all Americans. Unfortunately, the public debate about how delayed-notice warrants work and why investigators need them has featured a great deal of misinformation.

The Honorable J. Dennis Hastert
Page Two

Along with the other materials the Department has provided to Congress, we hope this report will serve to be informative to you and your constituents about the truth regarding our efforts in the war on terror, and our ever present battle against violent crime and drugs. It is vital that Congress act on the basis of facts rather than fictions. To that end, the Department is fully committed to providing Congress with the information it needs to inform its deliberations.

The progress made by the Department to date in the war against terrorism would not have been possible without the tools and resources provided by Congress. The Department is grateful for the strong support it has received from Congress and looks forward to working closely with Congress to ensure that the key tools contained in the USA PATRIOT Act do not expire at the end of 2005.

If we can be of further assistance regarding this or any other matter, please do not hesitate to contact this office.

Sincerely,

William E. Moschella
Assistant Attorney General

Enclosure

# Delayed-Notice Search Warrants:
## A Vital and Time-Honored Tool for Fighting Crime

*Introduction*

During the early stages of criminal investigations, including terrorism investigations, keeping the existence of an investigation confidential can be critical to its success. Tipping off suspects to the fact that they are under investigation could cause them to flee prosecution, destroy evidence, intimidate or kill witnesses or, in terrorism cases, even accelerate a plot to carry out an attack.

One vital tool for avoiding the harms caused by premature disclosure is the delayed-notice search warrant. A delayed-notice warrant is exactly like an ordinary search warrant in every respect except that law enforcement agents are authorized by a judge to temporarily delay giving notice that the search has been conducted.

Although delayed-notice warrants are a decades-old law enforcement tool, they have received increased attention since the USA PATRIOT Act established a uniform nationwide standard for their use. Unfortunately, the public debate about how delayed-notice warrants work and why investigators need them has featured a great deal of misinformation.

This paper explains how delayed-notice warrants actually work, why they are critical to the success of criminal investigations of all kinds, and what setbacks law enforcement would suffer if this well-established and important authority were limited or eliminated. It also details the time-honored judicial doctrine authorizing delayed notice in certain circumstances, as well as the USA PATRIOT Act's role in harmonizing standards for using delayed-notice warrants. Finally, to demonstrate the importance of delayed-notice warrants in real-world law enforcement, this paper highlights some post– USA PATRIOT Act investigations in which delayed-notice warrants were vital to the investigations' success.

*The Need for Delayed-Notice Search Warrants*

In the vast majority of cases, law enforcement agents provide immediate notice of a search warrant's execution. However, if immediate notice were required in *every* case, agents would find themselves in a quandary in certain sensitive investigations: how to accommodate both the urgent need to conduct a search and the equally pressing need to keep the ongoing investigation confidential. Consider, for example, a case in which law enforcement received a tip that a large shipment of heroin was about to be distributed and obtained a warrant to seize the drugs. To preserve the investigation's confidentiality and yet prevent the drugs' distribution, investigators would prefer to make the seizure appear to be a theft by rival drug traffickers. Should investigators be forced to let the drugs hit the streets because notice of a seizure would disclose the investigation and destroy any

chance of identifying the drug ring's leaders and dismantling the operation — or to make the alternative choice to sacrifice the investigation to keep dangerous drugs out of the community? What if immediate notice would disclose the identity of a cooperating witness, putting that witness in grave danger?

This dilemma is especially acute in terrorism investigations, where the slightest indication of government interest can lead a loosely connected cell to dissolve, only to re-form at some other time and place in pursuit of some other plot. Should investigators who receive a tip of an imminent attack decline to search the suspected terrorist's residence for evidence of when and where the attack will occur because notice of the search would prevent law enforcement agents from learning the identities of the remainder of the terrorist's cell, leaving it free to plan future attacks?

Fortunately, because delayed-notice search warrants are available in situations such as these, investigators do not have to choose between pursuing terrorists and criminals and protecting the public safety. Like any other search warrant, and as required by the Fourth Amendment, a delayed-notice search warrant is issued by a federal judge upon a showing of probable cause that the property to be searched for or seized constitutes evidence of a criminal offense. A delayed-notice warrant differs from an ordinary search warrant only in that the judge specifically authorizes the law enforcement officers executing the warrant to wait for a limited period of time before notifying the subject of the search that the warrant has been executed.

*Delayed-Notice Search Warrants: A Longstanding Law Enforcement Tool*

Delayed-notice search warrants are nothing new. Judges around the country have been issuing them for decades in circumstances where there are important reasons not to provide immediate notice that a search has been conducted. Such warrants have been squarely upheld by courts nationwide in a variety of contexts — from drug trafficking investigations to child pornography cases.

Long before enactment of the USA PATRIOT Act, the Supreme Court expressly held in *United States v. Dalia* that covert entry pursuant to a judicial warrant does not violate the Fourth Amendment, rejecting the argument that it was unconstitutional as "frivolous."[1] Since *Dalia*, three federal courts of appeals have considered the constitutionality of delayed-notice search warrants, and all three have upheld them.[2] In 1986, in *United States v. Freitas*, the Ninth Circuit considered the constitutionality of a search warrant allowing surreptitious entry to ascertain the status of a methamphetamine laboratory without revealing the existence of the investigation. While the court ruled that the covert search was permissible, it further held that the warrant's failure to specify when notice must be given was impermissible. The court set as a standard that notice

---

[1] *See Dalia v. United States*, 441 U.S. 238 (1979); *see also Katz v. United States*, 389 U.S. 347 (1967).
[2] *See United States v. Freitas*, 800 F.2d 1451 (9th Cir. 1986); *United States v. Villegas*, 899 F.2d 1324 (2d Cir. 1990); *United States v. Simons*, 206 F.3d 392 (4th Cir. 2000).

2

must be given within "a reasonable, but short, time" and ruled that that period could not exceed seven days absent "a strong showing of necessity."

Four years later, the Second Circuit reached a similar conclusion but articulated a different standard. In *United States v. Villegas*, the court considered the permissibility of a search warrant authorizing delayed notice of the search of a cocaine factory because the primary suspect's coconspirators had yet to be identified. The court held that delay is permissible if investigators show there is "good reason" for the delay. The Second Circuit agreed with the Ninth Circuit that the initial delay should not exceed seven days but allowed for further delays if each is justified by "a fresh showing of the need for further delay."

In 2000, in *United States v. Simon*, a decision that stemmed from a warrant to seize evidence of child pornography, the Fourth Circuit also ruled that delayed notification was constitutionally permissible. In that decision, though, the court ruled that a 45-day initial delay was constitutional.

In short, it was clear long before the USA PATRIOT Act that judges have the authority to authorize some delay in giving the notice of a search warrant's execution that is required by Rule 41 of the Federal Rules of Criminal Procedure — but the law governing issuance of delayed-noticed warrants was a mix of inconsistent rules, practices and court decisions varying from jurisdiction to jurisdiction.

*Section 213 of the USA PATRIOT Act*

In enacting the USA PATRIOT Act, Congress recognized that delayed-notice search warrants are a vital aspect of the Justice Department's strategy of prevention — detecting and incapacitating terrorists, drug dealers and other criminals before they can harm our nation. Section 213 of the Act, codified at 18 U.S.C. § 3103a, created an explicit statutory authority for investigators and prosecutors to ask a court for permission to delay temporarily notice that a warrant has been executed.

As discussed above, section 213 did not create delayed-notice search warrants, which have been issued by judges on their own authority for years. In fact, in a Texas drug-trafficking investigation, a court that had authorized a delayed-notice search warrant before enactment of the USA PATRIOT Act authorized a further delay of notification after enactment of the USA PATRIOT Act without modifying the procedure or justification for doing so.

Nor did section 213, as some critics have claimed, expand the government's ability to use delayed-notice warrants or authorize law enforcement to search private property without any notice to the owner. Rather, section 213 merely codified the authority that law enforcement had already possessed for decades and clarified the standard for its application. By doing so, the USA PATRIOT Act simply established a uniform national standard for the use of this vital crime-fighting tool.

3

Under section 213, delayed-notice warrants can be used only upon the issuance of an order from an Article III court, and only in extremely narrow circumstances. A court may allow law enforcement to delay notification only if the judge has reasonable cause to believe that immediate notification would result in danger to the life or physical safety of an individual, flight from prosecution, destruction of or tampering with evidence, intimidation of potential witnesses, or other serious jeopardy to an investigation or undue delay of a trial.[3] As such, section 213 provides greater safeguards for Americans' civil liberties than did the hodgepodge of pre-USA PATRIOT Act standards for delaying notice, which did not uniformly constrain judges' discretion as to what situations justified delays.

In no case does section 213 allow law enforcement to conduct searches or seizures without giving notice that the property has been searched or seized. Rather, section 213 expressly *requires* notice to be given, and merely allows agents, with a judge's approval, to delay notice temporarily for a "reasonable period" of time specified in the warrant. No delay beyond this specified time is allowed without further court authorization.

Section 213 also prohibits delayed-notice seizures where searches will suffice. The provision expressly requires that any warrant issued under its authority must prohibit the seizure of any tangible property or communication unless the court finds there is "reasonable necessity" for the seizure.

*Important Real-World Benefits of Delayed-Notice Warrants*

Delayed-notice warrants issued under section 213 over the course of the last three years have been invaluable in actual law enforcement investigations of crimes ranging from drug trafficking and money laundering to international terrorism. Although some of its uses cannot be discussed publicly because they have occurred in ongoing investigations or involve classified information, this section provides a number of examples of section 213's use that demonstrate just how vital the authority codified there is to effective law enforcement.

I.   Terrorism Investigations

Delayed-notice warrants have played critical roles in a number of investigations of the activities of terrorists and their supporters in the United States.

**Examples:**

➢   In *United States v. Odeh*, a narco-terrorism case, a court issued a section 213 warrant to search an envelope mailed to a target of the investigation. The search confirmed that the target was operating an

---

[3] *See* 18 U.S.C. § 2705(a)(2).

4

> illegal money exchange to funnel money to the Middle East, including to an associate of an apparent Islamic Jihad operative in Israel. The delayed-notice provision allowed investigators to conduct the search without compromising an ongoing wiretap on the target and several confederates. In May 2003, the target was notified of the search warrant's execution and charged.

> ➢ In a Chicago-area investigation in the spring of 2003, a court-authorized delayed-notice search warrant allowed investigators to gain evidence of a plan to ship unmanned aerial vehicle (UAV) components to Pakistan, but to gain that evidence without prompting the suspects to flee. The UAVs at issue would have been capable of carrying up to 200 pounds of cargo, potentially explosives, while guided out of line of sight by a laptop computer. Delayed notice of a search of email communications provided investigators information that allowed them to defer arresting the main suspect, who has since pleaded guilty, until all the shipments of UAV components had been located and were known to be in Chicago.

II.  Drug Investigations

The usefulness of delayed-notice search warrants is not limited to terrorism investigations. In fact, they have been particularly useful in the investigation of drug conspiracies because drug-trafficking operations often involve tenuous connections among participants that dissolve at the slightest hint of an investigation, as well as evidence that is quickly and easily destroyed and cooperating witnesses who are placed at great risk if the existence of an investigation is disclosed.

**Examples:**

> ➢ A delayed-notice warrant issued under section 213 was of tremendous value in Operation Candy Box, a multi-jurisdictional Organized Crime and Drug Enforcement Task Force (OCDETF) investigation targeting a Canadian-based ecstasy and marijuana trafficking organization. In 2004, investigators learned that an automobile loaded with a large quantity of ecstasy would be crossing the U.S.-Canadian border en route to Florida. On March 5, 2004, after the suspect vehicle crossed into the United States near Buffalo, DEA agents followed the vehicle until the driver stopped at a restaurant just off the highway. Thereafter, one agent used a duplicate key to enter the vehicle and drive away while other agents spread broken glass in the parking space to create the impression that the vehicle had been stolen. A search of the vehicle revealed a hidden compartment containing 30,000 ecstasy tablets and ten pounds of high-potency marijuana. Because investigators were able to obtain a delayed notification search warrant, the drugs were seized, the investigation was not jeopardized, and over 130 individuals were later arrested on March 31, 2004 in a two-nation crackdown. Without the delayed-notification search

5

> warrant, agents would have been forced to reveal the existence of the investigation prematurely, which almost certainly would have resulted in the flight of many of the targets of the investigation.

- In 2002, as part of a massive multi-state investigation of methamphetamine trafficking, the DEA learned that suspects were preparing to distribute a large quantity of methamphetamine in Indianapolis. Openly seizing the drugs would have compromised an investigation reaching as far as Alabama, Arizona, California and Hawaii; not seizing the drugs would have resulted in their distribution. With a court's approval, DEA agents searched the stash location and seized 8.5 pounds of methamphetamine without providing immediate notice of the seizure. In the wake of the drugs' disappearance, two main suspects had a telephone conversation about the disappearance that provided investigators further leads, eventually resulting in the seizure of fifteen more pounds of methamphetamine and the identification of the other members of the criminal organization. More than 100 individuals have been charged with drug trafficking as a part of this investigation, and a number have already been convicted.

- During an investigation into a nationwide organization that distributed cocaine, methamphetamine, and marijuana, the court issued a delayed notice warrant to search a residence in which agents seized more than 225 kilograms of drugs. The organization relied heavily on the irregular use of cell phones and usually discontinued use of particular cell phones after a seizure of drugs or drug proceeds, hampering continued telephone interception. Here, however, interceptions after the delayed-notice seizure indicated that the suspects believed that other drug dealers had stolen their drugs. None of the telephones intercepted was disposed of, and no one in the organization discontinued use of telephones. The delayed-notice seizure enabled the government to prevent sale of the seized drugs without disrupting the larger investigation.

- In 2002, DEA agents in California were intercepting wire communications of an OCDETF target who was distributing heroin and discovered that a load of heroin was to be delivered to a particular residence. Using a delayed notification search warrant, agents entered the residence. While they were able to seize a quantity of heroin, the load for which they were searching had not yet arrived. Had agents left notice at that point that law enforcement had entered the residence, the load would not have been delivered and the principals involved in the drug conspiracy would have scattered. A delayed-notice warrant, however, permitted the investigation to continue until the following week, when agents were able to seize 54 pounds of heroin and arrest the main targets of the investigation.

➤ In California, investigators successfully utilized a delayed-notification search warrant in a case involving methamphetamine. In that case, the perpetrators had ordered a 22-liter flask and heating mantle for their methamphetamine lab, and investigators wanted to intercept the shipment and place a beeper inside to track the items. The tracker worked, and investigators eventually took down a lab in the process of cooking about 12 pounds of methamphetamine. Had agents given notice at the time the beeper was installed, the investigation would have ended immediately.

III.   Investigations of Other Serious Crimes

Delayed-notice warrants have also played critical roles in investigations of a variety of other serious criminal activities.

**Examples:**

➤ During the investigative phase of what became a major drug prosecution in Pennsylvania, investigators using a wiretap learned of a counterfeit credit card operation. At prosecutors' request, the court issued a delayed-notice search warrant for a package of counterfeit cards scheduled for delivery to the business of one of the drug suspects. This successful search enabled investigators to secure evidence of the credit card fraud and to notify banks that certain accounts had been compromised — but to do so without immediately disclosing to the suspects either the existence of the wiretap or the investigation itself. Delaying notification of the warrant's execution allowed for immediate action to prevent possible imminent harm from the credit card counterfeiting scheme while maintaining the temporary confidentiality of the drug investigation, which was not yet ripe for disclosure. As a result, prosecutors were able to secure multiple convictions in both the drug prosecution and the credit card prosecution.

➤ A delayed-notice search warrant allowed agents investigating an international money laundering operation to secure evidence of the conspiracy without jeopardizing their investigation. An extensive network of perpetrators was laundering more than $20 million per year in proceeds from a black market peso exchange operating in New York, Miami and Colombia, Israeli drug trafficking, and California-based tax evasion. Before the investigation was made public, investigators learned that the main suspect was shipping a large volume of cash from Miami to New York. The court approved a delayed-notice warrant, which allowed agents to photograph the money — memorializing its existence for use in prosecuting the conspiracy — without compromising the confidentiality of the ongoing investigation.

7

*Conclusion*

Both before and after the enactment of section 213 of the USA PATRIOT Act, immediate notice that a search warrant has been executed has been standard procedure. As has always been the case, delayed-notice warrants are used infrequently and judiciously — only in appropriate situations where immediate notice likely would harm individuals or compromise investigations, and even then only with a judge's express approval. As demonstrated by the examples above, however, the ability to delay notice that a search or seizure has taken place is invaluable when those rare situations arise. The investigators and prosecutors on the front lines of fighting crime and terrorism should not be forced to choose between preventing immediate harm — such as a terrorist attack or an influx of illegal drugs — and completing a sensitive investigation that might shut down the entire terror cell or drug trafficking operation. Thanks to the long-standing availability of delayed-notice warrants in these circumstances, they do not have to make that choice.