1           IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF NEBRASKA
2

3    THE UNITED STATES OF AMERICA,    )    Case Nos. 8:13CR108
                                      )    and 8:15CR239
4                     Plaintiff,      )
                                      )
5               vs.                   )
                                      )
6    KIRK COTTOM,                     )
                                      )    Omaha, Nebraska
7                     Defendant.      )    December 17, 2015

8

            TRANSCRIPT OF SENTENCING PROCEEDINGS
9        BEFORE THE HONORABLE JOSEPH F. BATAILLON
            UNITED STATES SENIOR DISTRICT JUDGE
10

11                  A-P-P-E-A-R-A-N-C-E-S

12   FOR THE PLAINTIFF:          Mr. Keith A. Becker
                                 Trial Attorney
13                               U.S. Department of Justice
                                 1400 New York Ave., NW
14                               Suite 600
                                 Washington, DC 20530
15
                                 Mr. Michael P. Norris
16                               Assistant U.S. Attorney
                                 1620 Dodge Street, Ste. 1400
17                               Omaha, Nebraska 68102-1506

18   FOR THE DEFENDANT:          Mr. Joseph L. Howard
                                 Dornan, Lustgarten & Troia PC
19                               1403 Farnam Street, Ste. 232
                                 Omaha, Nebraska 68102
20

21   COURT REPORTER:            Ms. Susan M. DeVetter, RDR, CRR
                                 Official Court Reporter
22                               Hruska Courthouse, Suite 3130
                                 111 South 18th Plaza
23                               Omaha, Nebraska 68102-1322
                                 (402) 661-7309
24

25   Proceedings recorded by mechanical stenography, transcript
     produced with computer.

1          (At 1:56 p.m. on December 17, 2015; with counsel and the

2     defendant present:)

3          THE COURT:  Please be seated.

4        This is the case of the United States of America versus

5     Kirk Cottom, Case No. 13CR108.

6        Would the attorneys please enter their appearance for the

7     record.

8          MR. NORRIS:  Good afternoon, Your Honor.  For the

9     United States, I'm Michael Norris.

10          MR. BECKER:  Keith Becker for the United States.

11     Good afternoon, Your Honor.

12          MR. HOWARD:  On behalf of and with the defendant,

13     Joseph L. Howard with the law firm of Dornan Lustgarten &

14     Troia.  Good afternoon.

15          THE COURT:  The defendant pled guilty to Count II

16     of the Second Superseding Indictment on August 3rd, 2015,

17     in Case No. 13CR108.  He also pled guilty to Count I of the

18     Indictment in Western District of New York, which is now

19     15CR239 in Nebraska, charging receipt of child pornography in

20     violation of 18 United States Code, Section 18 -- or excuse me,

21     18 United States Code, Section 2252 subparagraph -- 2252A,

22     subparagraph (a)(2)(A).

23        The Court accepts the defendant's conditional pleas to

24     Count II of the Second Superseding Indictment and Count I of

25     the Indictment in 15CR239.  And if I didn't say so, Count II of

1    the Second Superseding Indictment in 15CR108 [*sic*].  So there's

2    two charges.  And the Court finds the defendant guilty of both

3    charges.

4        A presentence investigation report was prepared in this

5    matter.  Does the government accept and adopt the report,

6    Mr. Norris?

7              MR. NORRIS:  Yes, Your Honor.

8              THE COURT:  All right.  And, Mr. Howard, do you have

9    any objection to the presentence report?

10             MR. HOWARD:  Yes, Your Honor.  We filed those

11   objections and they are incorporated in the revised presentence

12   report, which -- I think an addendum or a couple of pages at

13   the end, sir, that --

14             THE COURT:  Correct.  And so the only -- I mean, I

15   saw some objections.  The one objection that struck me is the

16   objection on the number of images.  But you conceded that the

17   number of images did not affect the probation officer's

18   guideline calculation, correct?

19             MR. HOWARD:  That's --  May I stand?

20             THE COURT:  Yes.

21             MR. HOWARD:  Thank you.

22        Judge, that's correct, it doesn't affect it.  So -- I

23   suppose I could withdraw that.  I just wanted to bring that to

24   the Court's attention.

25        And just also to correct something else that I wrote,

1    Mr. Becker was good enough as to bring his laptop and prior

2    to this proceeding the two of us sat down in the conference

3    room and reviewed the images again because I had made an

4    objection to the sadomasochistic depictions, alleging --

5    objecting that there weren't pictures of violence or

6    sadomasochistic behaviors.  And Mr. Becker allowed me to go

7    through the images again.  We did find a number of images,

8    I -- I mean, I -- maybe -- I think we looked at maybe ten,

9    15, 20 --

10              THE COURT:  You only need one.

11              MR. HOWARD:  Right.  So there was more than one

12   image of penetration, which under the Eighth Circuit's

13   interpretation of that type of behavior that -- those are

14   there.

15        So I objected to that, but under the case law, I -- I

16   believe that it's only proper that I withdraw that objection.

17              THE COURT:  Okay.  So the Court -- with respect

18   to the enhancement for the number of images, the Court will

19   find -- the Court will find that there are 600 or more

20   images that were found in the defendant's possession and

21   will ask the presentence report be amended to just say 600

22   or more.  And that way we don't have a fight about what the

23   exact number is.

24        If that's acceptable to the government?

25              MR. NORRIS:  It is, Your Honor.

1          THE COURT:  Okay.  And then with respect to the

2     sadomasochistic enhancement, plus four under guideline

3     2G2.2(4)(b) -- (b)(4) is -- that objection's withdrawn.

4          Do you have any other objections, Mr. Howard?

5          MR. HOWARD:  No, sir.

6          THE COURT:  All right.  Mr. Cottom, did you review

7     the presentence report yourself, sir?

8          THE DEFENDANT:  Yes.

9          THE COURT:  The Court will accept the presentence

10    investigation report as amended and finds as follows:

11         The base offense level is 22, minus two because the

12    conduct was limited to receipt of material, plus two because

13    the materials involved prepubescent minors who had not yet

14    attained the age of 12, plus four because some of the material

15    depicts sadistic or masochistic conduct, plus two because the

16    defendant used a computer, plus five for the number of images,

17    which is greater than 600, for an adjusted offense level of 33.

18    Minus three for acceptance of responsibility.  Total offense

19    level 30.

20         Criminal history category I.

21         Sentencing range of imprisonment is 97 to 120 months.

22         Supervised release range is five years to life.

23         The fine range is 15,000 to $150,000; and a $200 special

24    assessment, $100 for each indictment.

25         Now, the parties had asked me a number of questions.

1    Number one, I had promised a written decision on the *Daubert*

2    motion.  And I made an oral ruling in the *Daubert* motion and

3    then told the -- told the parties that there would be a written

4    opinion.  I did not prepare the written opinion because guilty

5    pleas followed promptly.  Because the *Daubert* was for more than

6    one defendant, as I recall.

7         But we will prepare a written opinion.  And it will be

8    published simultaneous with the J&C, which I anticipate will be

9    done tomorrow.

10        Now, the other issue is the violation of -- or the alleged

11   violation of pretrial release.  I told the parties I would take

12   that up today.  I'm willing to take it up as part of the

13   sentence or separately from the sentence, whichever the

14   government prefers.

15        And I'm not sure, was a petition filed?

16             MR. NORRIS:  Yes.

17             THE COURT:  Okay.

18             MR. NORRIS:  There is a petition on file.  There is

19   a -- an update from pretrial services.

20        It doesn't matter to me, Your Honor, whether we take it up

21   as part of sentencing or whether we do it at the end.  It is

22   not our intention to agree to allow him to self-surrender, if

23   that helps you --

24             THE COURT:  Well, you know, my thought is -- my

25   thought is that if the allegation is proved to be substantial,

1       then I'm not likely to let him self-surrender.  If it's proved

2       to be in- -- unsubstantiated, then I would consider letting him

3       self-surrender.  But that doesn't mean I would let him

4       self-surrender.  It just depends.

5           So what I would prefer to do is to take up the matter of

6       sentencing first and then after the sentencing, when we come to

7       the issue of self-surrender, then take up the issue as it

8       relates to the alleged violation of pretrial release.

9           Is that acceptable to the government?

10              MR. NORRIS:  Yes, Your Honor.

11              THE COURT:  Is that acceptable to you, Mr. Howard?

12              MR. HOWARD:  Of course.  Thank you.

13              THE COURT:  Okay.  So allocution, Mr. Howard.

14              MR. HOWARD:  Thank you, sir.

15          Your Honor, last night following the change of -- the

16      motion for the change of plea hearing, we filed a motion for a

17      variance.

18          And what I'm trying to point out in that -- in the motion

19      for the variance essentially is that Mr. Cottom is 45 years

20      old.  And for the last about two-and-a-half years since this

21      all started, he's been on pretrial release.  And what that's

22      meant is that his mother, Jule, who's here today -- she flew in

23      from New York -- and Mr. Cottom's father, Henry Cottom, have

24      been rotating, rotating living at Mr. Cottom's residence.  Over

25      the weekends Mrs. Cottom will stay there and during the weeks

1      Mr. Cottom will stay with Kirk.

2         He hasn't had -- he hasn't been allowed to use Internet

3      but for work purposes.  And this is the type of case that

4      also reminds us why we have a right to a speedy trial

5      because I've watched my client go through the -- the Sturm und

6      Drang, the anxiety that comes with having a prosecution over

7      his head.

8         And what I'm trying to articulate to the Court is that

9      my client, although he appreciates -- while he appreciates

10     pretrial release, he's already suffering the penalties.

11        He's here for sentencing today.  And because of Count

12     Number I of the indictment out of New York, the Court is bound

13     by a mandatory minimum sentence of at least 60 months.  So for

14     me to ask for anything less than that is -- is a waste of

15     everybody's time.  Mr. Cottom recognizes that.  He knows that.

16     He's looking at serious time.

17        And what's going through my head looking at this case is,

18     what happens next?  Because the Court is bound to give him a

19     sentence, a substantial sentence.  I mean, five years for the

20     crime just doesn't seem right in -- in my opinion, but who

21     am I?

22        What happens next is Mr. Cottom will go serve his time.

23     And he's going to serve, again, at least six years.  And so he

24     gets out.  He's in his 60s.  Then what happens to Mr. Cottom?

25     He doesn't have much money.  You saw his financial report.

1    Doesn't have much money.

2        He -- he's educated.  But what are the chances that

3    Mr. Cottom's really going to be able to find substantial

4    employment, something where he's going to be able to use his

5    degree?  After all, he's going to be a convicted sex offender.

6    Anyone who looks up on the Internet right now, Your Honor, sees

7    the case.  They know exactly what he's alleged -- what he's

8    convicted of now.

9        Mr. Cottom's life as he knew it is over.

10       Now, why's that the Court's concern?  I mean, after all,

11   Mr. Cottom pled guilty.

12       It's the Court's concern, I believe, because I believe

13   that the Court wants to give an appropriate sentence, a

14   sentence that fits the crime.

15       In this case, Mr. Cottom, the allegation is that he

16   accessed a -- a site that was taken over by the government.

17   You know the back story.  There was only one hit.  It lasted,

18   as the testimony was, for maybe ten to 15 minutes.

19       And while there were more than 600 images on his machine,

20   much of that, Your Honor, was, again, browser cache,

21   thumbnails.

22       This isn't -- as sophisticated as my client may be with

23   computers, this isn't an individual who was manufacturing

24   child pornography.  This isn't an individual who was

25   disseminating it.  There's no evidence that he was sharing

1    it with anyone else.

2         Mr. Cottom, like many of the other defendants in these

3    type of cases, is educated, has no criminal history.  And,

4    again, but for this, he really has never been on any government

5    radar.

6         Mr. Cottom's parents, Jule's 67 and his father Henry's 78

7    years old.  His father has ailing health.  He has -- he's a

8    chronic smoker.  And Mr. Cottom really wonders what's going to

9    happen with them.  And, you know, their relationship has been

10   rather symbiotic.  He's tried to help support them while

11   they're supporting him.

12        I don't believe that anything over 60 months is

13   necessary in terms of justice, in terms of a punishment

14   that fits the -- the extent of this crime.  This is not a

15   victimless crime.  I don't believe the government is looking

16   for any type of restitution.  But this process, you know,

17   watching this individual mentally anguish going through all

18   of this and with the punishment that is to come momentarily,

19   it's hard to foresee this individual ever becoming a recidivist

20   or doing anything again like this.

21             THE COURT:  So -- but how -- that brings up the

22   question that I have for you, Mr. Howard.  I'm sure you're

23   familiar with my sentencing practice and that is I generally

24   require a psychological evaluation of the defendant to form a

25   basis for my giving something less than a guideline sentence.

1   And your client has not done that.  And -- so my question to

2   you is, how do I know he's not going to do anything if I don't

3   know anything about him psychologically?

4           MR. HOWARD:  He's been on pretrial release for the

5   last two-and-a-half years, okay?  And the worst thing that

6   we've heard is that he had a PlayStation 3, a Wii, and a

7   PlayStation 2 in his house in plain view.  There's been no

8   allegations that he's -- or there's been no evidence that he's

9   improperly accessed the Internet.  There's no evidence that

10  he's looked at pornography since then.  His mother can testify

11  to you that he comes home every night and goes to bed.

12          He's -- he's been able to live the straight and narrow

13  for two-and-a-half years.  And he's maintained gainful

14  employment, maintained the relationships in his lives -- in

15  his life.

16          You know, we really don't see any evidence of him

17  reaching out, trying to communicate -- even during the

18  commission of the crime, there's no reaching out, trying to

19  establish communications with children.  None of that was --

20  was apparent.

21          We don't have a psychological evaluation but I suspect

22  that once he's incarcerated he will receive sex offender

23  treatment if he goes to the appropriate facility.

24          So -- I'm sorry that I can't answer that better for you,

25  sir.

```
 1              THE COURT:  You may continue.

 2              MR. HOWARD:  Thank you.

 3         (Mr. Howard and the defendant conferred.)

 4              MR. HOWARD:  Your Honor, I tried to articulate in

 5    my -- my motion for a variance some of the difficulties that

 6    this Court, in fact, has had with the sentencing guidelines.

 7    And so I don't think that I need to take your time to reiterate

 8    to you what you have already said.

 9         I ask you to take those things that I've brought up in my

10    motion under consideration and, accordingly, I would

11    respectfully submit.

12              THE COURT:  All right.  Mr. Cottom, is there any

13    statement you would like to make, sir?

14              THE DEFENDANT:  No.  No.

15              THE COURT:  And who speaks for the government?

16    Mr. Norris?

17              MR. NORRIS:  I will, Your Honor.

18         Your Honor, we are recommending a sentence of 97 months, a

19    ten-year term of supervised release to follow, and a $20,000

20    fine.  And I'll explain my recommendation at this time.

21         First of all, the 97 months gives him the benefit of the

22    plea agreement, even though in our eyes he's violated that plea

23    agreement.  We don't believe that we are required to recommend

24    the bottom end.  I think we've been released of that

25    obligation.  But I do think that a 97-month sentence would be
```

1    appropriate when the Court compares the sentences that it

2    has imposed in other similarly situated cases that have been

3    before the Court, as well as his actual conduct with regard

4    to this.

5        So if he didn't have acceptance of responsibility, he

6    would be looking at 135 to 168 months.

7        We're asking you for a 97-month sentence.  Probation is

8    recommending an 85-month sentence.  I think ours is the better

9    recommendation based on what I'm about to tell you.

10       You have seen a number of these trials.  You have seen the

11   individuals who have came in and pled.  You have seen them

12   individually, as well as collectively.  You observed Mr. Welch,

13   who was pretty much -- he ran a Linux system.  He had some

14   encryption.  He had various -- and went to trial.  He too did

15   not have acceptance of responsibility.

16       Your comments in sentencing Mr. Welch to ten years were

17   along the lines of I view this as a possession case more so

18   than a receipt case, but I view this as an extreme, on the

19   extreme of the possession cases, because of your use of -- I

20   assume because of the use of the Tor network and some other

21   things that were present there.

22       You have the same situation here.  You have an individual

23   who was on the Tor network.

24       Now, in the motion for variance, there are points made

25   about how the guidelines are out of touch.  Quotes back a lot

1    of your prior peer-to-peer type cases that talk about how some

2    of these things don't basically jive anymore.

3         But the important thing to remember here is, and

4    Mr. Howard himself cited them, was the sentencing guidelines'

5    recommendations on how the guidelines should be adjusted.  And

6    some of those factors include whether or not an individual used

7    sophisticated technology.  It doesn't get any more

8    sophisticated than the Tor network.

9         This investigation itself, this case itself, had -- was

10   a first of its kind, had to be the first of its kind because

11   there was no way to get at individuals who were operating on

12   the Tor network, and it has now been used in other cases in

13   order to find people on the Tor network.  And it's had some

14   success in driving people from the Tor network.  Now they'll

15   have to find another sophisticated form of technology.

16        But that's where Mr. Cottom was operating, was on the

17   Tor network.

18        You have other signs of sophisticated technology here.

19   And you heard them yesterday.  You heard them during the

20   *Daubert* hearing.  And that is the fact that he was running

21   encryption.  He's got a box, a computer box, a drive, that we

22   don't know what's on there.  It's completely encrypted.

23        So when he talks about the absence of evidence being

24   evidence of absence, you have to remember, he's sitting out

25   there with a box that is encrypted that the FBI can't break.

1    So there, again, somebody using sophisticated technology.

2         It talks in the context of the degree of an offender's

3    engagement with other offenders.  This Court's well aware of

4    Pedoboard and PedoBook that are a little bit higher engagement

5    than TB2, because TB2's more of a simple board, but all three

6    of those boards allowed an individual to communicate, to

7    associate, probably is a better word, with other individuals

8    who had like interests and would not be ostracized for viewing

9    their like interests on the Internet.

10        The last one is whether or not he has a history of

11   engaging in sexually abusive, exploitive or predatory conduct.

12   We don't know.  He doesn't have any history of it as far as an

13   official record.  But we're not going to find that out and

14   we're not going to find that out until he gets on supervised

15   release and he has to take a therapeutic polygraph in order to

16   determine whether or not, as the government maintains, more

17   than 50 percent of these individuals have, or whether he

18   hasn't.  And it doesn't really matter.  We just know that we're

19   not going to know that until that is done.  So we have that.

20        With that in mind, Your Honor, given what you have imposed

21   to others, given how he's differentiated from others, given the

22   fact that he hasn't accepted responsibility, given the nature

23   of the images, given the overwhelming number of the images

24   without even having access to what's been encrypted, we believe

25   that a sentence of 97 months is more than appropriate; that a

1  ten-year term of supervised release, because you don't have

2  something to look at to determine whether or not he's an issue

3  and at least if he gets somewhere along after five years of

4  that and decides that -- and others decide that he's not an

5  issue, then it can always be reduced.

6     And we're suggesting a $20,000 fine.  And the $20,000 fine

7  comes as follows:  He's got decent income.  He's got decent

8  work.  He's been able to maintain and keep that work over the

9  last couple of years while the courts have been paying for his

10 lawyers, have -- he essentially was the Pied Piper with regard

11 to the experts that were hired with regard to this because it

12 was CJA appointments.  And he's got the income.  And I think it

13 would also be appropriate, in this circumstance, in order to

14 impose a fine.  And if the Court doesn't believe that 20,000,

15 based upon his income or if it believes that it's too high, I

16 do think it's important to impose some sort of fine with regard

17 to this matter.

18     Thank you.

19          THE COURT:  Well, I have a couple of questions.

20          MR. NORRIS:  Sure.

21          THE COURT:  I'm looking at my notes on Joshua Welch

22 and there were allegations that Mr. Welch was actively engaged

23 in child pornography and possibly in the production of child

24 pornography, so that differentiates -- I know that the

25 defendant objected to one of the paragraphs in the presentence

1    report because the photographs were, he claimed, I think, of

2    his daughter's rash.  Does that ring a bell to you?

3             MR. NORRIS:  Um-hum.  I remember Mr. Welch.

4             THE COURT:  And there was an allegation that he was

5    sexually abusing his wife's -- the children of his wife's

6    cousin.  So I think that those issues differentiate him from

7    Mr. Cottom, because we don't have any evidence of that in

8    Mr. Cottom's case.

9             MR. NORRIS:  Okay.

10             THE COURT:  All right?  And so the next question I

11    have of you is, you offered a number of individuals that have

12    criminal history I's that have about the same number of

13    images as Mr. Cottom, mostly less, but the same number, an

14    11(c)(1) for 48 months.  And I understand that one of the

15    differentiating portions -- differentiating factors them from

16    Mr. Cottom is that they admitted guilt and I think all of them

17    submitted to some psychological evaluation.

18             MR. NORRIS:  I don't know --

19             THE COURT:  And you didn't give any of them

20    conditional pleas.

21             MR. NORRIS:  Correct.

22             THE COURT:  So those are the factors that seem to

23    differentiate them from Mr. Cottom.

24        Are there any others?  Any other factors that

25    differentiate them from Mr. Cottom?

```
1              MR. NORRIS:  Well, from -- we'll start with your last
2    point and move backwards.  The last point that you're making
3    though is the timeliness of the acceptance.
4              THE COURT:  Okay.
5              MR. NORRIS:  So -- and here we don't have acceptance.
6    I mean, we probably had acceptance up until -- and that was
7    only begrudging acceptance.  We were -- two levels I think
8    would have been appropriate given the fact that he has a
9    Daubert hearing and then rolls in and enters a plea shortly
10   after that Daubert hearing.
11             THE COURT:  And then tries to withdraw it.
12             MR. NORRIS:  Well, the fact that he tries to withdraw
13   it takes all three of those points away.  I don't know that he
14   would have been the third point in the first place, and then
15   yesterday eliminated the other two points.  So he doesn't even
16   have acceptance compared with the others.
17         But the others, they were offered no condition- -- in
18   return for no conditional plea, which means that we're not
19   going to end up briefing it beyond this point, they came in
20   early and said yes, we're going to take that.
21             THE COURT:  Okay.
22             MR. NORRIS:  They bumped along and rode along with
23   the motion to suppress.  And then once that motion to suppress
24   was decided, most of them came to the conclusion that a Rule 41
25   violation is not going to get me where I need to be and we'll
```

1    take the -- and part of that was an accommodation on our part

2    that we didn't want to have 25 trials.  We ended up having

3    four, which is probably three more than we expected to have

4    after making that offer.

5         But he didn't take advantage of that, so he went the

6    conditional plea route.  And in going the conditional plea

7    route, he then lost his acceptance by dragging this out.

8         One of the things that Mr. Howard talks about is that he's

9    been under supervised release for two-and-a-half years.  Well,

10   that's all on him.  That's not on us.  We were ready.  We've

11   been ready for a long time.  He hires the experts.  He

12   continues to come up with a different things that he wants the

13   experts to look at and we drag this along and along and along

14   until ultimately he can't drag it out any further and then he

15   drags it along with the withdrawal of the plea hearing.

16        I want to turn my attention to Mr. Welch.  You're

17   absolutely correct there were some allegations, unproven

18   allegations, allegations that we weren't going to be able to

19   prove up.

20        There was the reference that one of the -- but I don't

21   know that the rash -- might have been on a butt cheek or

22   something along those lines.  Was it child pornographic?

23   Probably.  Maybe, maybe not.  There could have been an argument

24   there.  But that was on his computer and that is something that

25   obviously alarmed us and it clearly alarmed you in the sentence

1    that you imposed.

2         With regard to the allegation of sexual abuse, I do recall

3    that there was an allegation that developed a movement from

4    either Pensacola to somewhere in Missouri, or vice versa, as a

5    result of that allegation, but then it was -- I wouldn't say

6    unfounded as much as it was closed because they couldn't get

7    any further with it.

8         So, yeah, that's out there.  We don't have that here.

9              THE COURT:  Well, I mean, obviously he had access to

10   children that we don't have evidence that Mr. Cottom has access

11   to kids.

12             MR. NORRIS:  Correct.  But we also don't know what is

13   on the encrypted drive.

14             THE COURT:  Right.

15             MR. NORRIS:  I'm -- if I could just have a second to

16   check with Mr. Becker, this may be the only encrypted drive

17   that we weren't able to unlock.

18             THE COURT:  I thought we had one other.

19        (Plaintiff's counsel conferred.)

20             MR. NORRIS:  He doesn't recall any others.  And this

21   is a laptop that is fully encrypted, not just the drive of

22   the -- of the laptop.  So who knows what's in there and what

23   type of evidence is in there, other than the fact that

24   operating on Tor and wanting to encrypt whatever's on there

25   leaves us only to speculate and -- and I speculate with bad

1    intent.

2         So that's -- I hope that's answered your questions.

3              THE COURT:  It does.

4              MR. NORRIS:  I feel like I've missed one though.

5              THE COURT:  No, no, you've answered my questions.

6              MR. NORRIS:  All right.

7              THE COURT:  All right.  So I asked a few questions of

8    counsel for the government.  Mr. Howard, is there any response

9    that you wanted to make?

10             MR. HOWARD:  Well, yes.  Thank you.

11        Regarding this encrypted drive, Mr. Cottom advises me that

12   the encrypted drive is a copy of what has been labeled by the

13   government as Q10, which is a drive that they've already --

14   that they have in their possession.  Mr. Cottom can't open the

15   encrypted drive either.  He maintained like 30-letter

16   passwords, which were just random numbers and letters.  And he

17   advises me that he was never asked to produce those.  He

18   doesn't have the password.  He can't even open them himself.

19        He would appreciate the Court not holding that against

20   him.

21        Regarding the -- Mr. Cottom's similarities to Mr. Welch, I

22   think the Court can appreciate that this is a substantially

23   different case.  And, yes, yesterday we had a motion to

24   with- -- withdraw the plea.  Obviously it was -- it was denied.

25   But prior to that, Your Honor, he had waived his right to a

 1    jury trial.  And I -- I'd ask the Court to take that into

 2    consideration.  Because when -- if -- were we to go to court,

 3    his arguments were going to be very nuanced, very scientific

 4    and very computer oriented.  And what he did not ever want to

 5    do was make a jury of Nebraska peers or -- have to watch any

 6    child pornography.  And so he -- he did that so he could

 7    present the case to you if we were going to -- to bring it to

 8    trial.

 9         For what that's worth, we would appreciate some

10    consideration on that as well.

11         And -- and also, in terms of Mr. -- Mr. Cottom being on

12    pretrial release, you know, he has used resources provided by

13    the court.  He appreciates those.  I want to stress too though

14    that each time that he comes to court, he does that on his own

15    dime.  He's never asked for any com- -- or any payment for the

16    flight or the hotel or any of that.  He's -- he's been pretty

17    responsible about that.  And so he's trying to pay for what he

18    can.

19         You've seen his financials.  I don't believe a fine is

20    appropriate.  It's -- it's really not necessary, Your Honor.

21         We're respectfully asking for 60 months' incarceration at

22    a minimal correctional center in the vicinity of Rochester so

23    that his elderly parents can visit him on occasion.

24              THE COURT:  All right.  I'd like to take a short

25    recess at this time.  So let's take -- I'm sure I've got a 2:30

1    hearing too, don't I?

2                COURTROOM DEPUTY:  No.  It got moved.

3                THE COURT:  Oh, it did?  All right.  So let's take

4    ten.

5        (Recess at 2:29 p.m.)

6        (At 2:44 p.m. on December 17, 2015; with counsel and the

7    defendant present:)

8                THE COURT:  Is there any legal reason the Court

9    should not proceed to sentencing at this time?  Mr. Norris?

10               MR. NORRIS:  No, Your Honor.

11               THE COURT:  Mr. Howard?

12               MR. HOWARD:  No, sir.

13               THE COURT:  Well, the probation office has

14   recommended a sentence of 85 months.  I don't think that's

15   unreasonable.  Mr. Norris's argument makes a great deal of

16   sense to me.

17       So here's what I'm going to say.  Defendants that were

18   similarly situated to Mr. Cottom were offered 11(c)(1)(C) plea

19   agreements to 48 months.  But for the reasons articulated by

20   the government, Mr. Cottom was not given that opportunity

21   and -- well, he might have been given that opportunity, but

22   declined to accept it, for whatever reasons.

23       So it seems to me that the plea agreement to 60 months is

24   certainly reasonable, and I've accepted the plea agreement.

25   And if I haven't, I do now.

1        Then the other factor that concerns me is that

2   Mr. Cottom -- Mr. Cottom's acceptance of responsibility is

3   extremely tenuous, especially given the statements that he made

4   to me yesterday during his attempts -- or his attorney at least

5   made to me yesterday in his attempts to withdraw his plea.

6        Additionally, he has not submitted to a psychological

7   evaluation, which is my common practice, and I don't have much

8   doubt was offered to Mr. Cottom by defense counsel, but that

9   Mr. Cottom has respectfully declined.

10       And I, frankly, can't have defendants not doing

11  psychological evaluations and expect me to give them the

12  statutory minimum sentence.

13       So it seems to me that an increased sentence just for that

14  reason, from my standpoint and my sentencing practice and the

15  sentencing practice of this district, is in order.

16       And so then the question, is it -- is whether I should

17  follow the recommendation of the probation office, the

18  recommendation of the government, or something less than that.

19       And to no surprise to Mr. Norris, I'm going to do

20  something less than that.  But I'm giving Mr. Cottom a year

21  over the statutory minimum for the reasons that I've

22  articulated and certainly for the reasons that the government

23  has articulated.

24       So I'm sentencing him to 72 months.  Credit for time

25  served.

1      I'm placing him on a period of supervised release of six

2   years subject to the mandatory conditions, the standard

3   conditions, and then all the special conditions recommended by

4   the probation office except for the condition that talks about

5   loitering around schoolyards.  I -- I think that that's

6   problematic from an enforcement standpoint.  And I don't have

7   any evidence that that's an issue -- I don't have substantial

8   evidence that that's an issue with Mr. Cottom.

9      But otherwise, I'll add the word "therapeutic" to all of

10  the polygraph examinations.

11     And then with respect to the -- I suspect that the

12  probation officer recommended that Mr. Cottom shall not view

13  any pornographic material.  That's not listed in my list of

14  conditions.  But I -- so just to be clear on what I'm ordering,

15  the defendant shall not possess, use, or otherwise -- possess,

16  view, or otherwise use materials, including videos, magazines,

17  photographs, computer-generated depictions, or any other forms

18  that depict explicit conduct involving children as defined in

19  18 U.S.C. 2256.

20     And otherwise all of the special conditions recommended by

21  the probation officer are imposed.

22     A $100 -- it's a $200 special assessment is imposed, one

23  for each of the felony counts.

24     The -- I understand the government's request for financial

25  penalty.  The probation office does not recommend a financial

1    penalty.  I have little doubt that what Mr. Howard says about

2    Mr. Cottom's financial situation when he's discharged from

3    prison will be true, and so I don't think a financial penalty

4    is in order, other than the special assessment.

5         No fine or court costs are imposed, frankly, because he

6    doesn't have the ability to pay.

7         Is there any legal reason the Court should not impose the

8    sentence previously stated?  Mr. Norris?

9              MR. NORRIS:  No, Your Honor.

10             THE COURT:  Mr. Howard?

11             MR. HOWARD:  There's no legal reason, Judge.  Thank

12   you.

13             THE COURT:  The sentence previously stated shall be,

14   and hereby is, imposed on the defendant, Kirk Cottom.

15        Now let's talk about self-surrender.

16        There's a dispute as to whether or not Mr. Cottom violated

17   the terms of his pretrial release.  And I think that -- that

18   because of the length of the sentence, because there's no

19   statutory obligation for me to allow him to self-surrender,

20   because he has a problem with acceptance of responsibility, and

21   I don't have any psychological background on him, I'm going to

22   order that he's remanded to the custody of the marshal at this

23   time.  And I don't know that we need then to worry about the

24   issue of pretrial violation.

25        Is the government acceptable with that approach,

1    Mr. Norris?

2         MR. NORRIS:  Yes, Your Honor.  And we would dismiss

3    the petition at that point.

4         THE COURT:  All right.  The petition's dismissed.

5    Mr. Cottom, you have the right to appeal your sentence and

6    conviction but you have to file it within 14 days of when I

7    enter the order in your case.  If you don't have enough money

8    to pay for a lawyer or the cost of the appeal, talk to

9    Mr. Howard, he'll get the paperwork together, then you don't

10   have to pay for a lawyer or the cost of the appeal, because you

11   already have a financial affidavit on file.

12   Anything further from the government?

13        MR. NORRIS:  Yes, Your Honor.  We are going to move

14   to dismiss -- would be Count I of the Nebraska indictment,

15   which would be 8:13CR108, and Counts II through the remainder

16   of the indictment in the District -- Western District of New

17   York indictment, which appears to be 6:15CR, although I think

18   that probably should be 8.

19        THE COURT:  All right.  Well, the -- Count I of the

20   Nebraska indictment 13CR108 is dismissed.  And Counts II

21   through the balance of the indictment of what was previously

22   the New York indictment are now dismissed as to this defendant.

23   Anything further, Mr. Norris?

24        MR. NORRIS:  No, Your Honor.

25        THE COURT:  Anything further, Mr. Howard?

1              MR. HOWARD:  No.  Thank you, Judge.

2              THE COURT:  Defendant's remanded to the custody of

3      the marshal.

4          We're adjourned.

5          (Recess at 2:52 p.m.)

6                              * * *

7

8

9

10

11

12

13

14

15

16

17

18

19              C E R T I F I C A T I O N

20          I, Susan M. DeVetter, RDR, CRR, certify that the foregoing

21      is a correct transcript from the record of proceedings in the

22      above-entitled matter.

23

24      /s/ Susan M. DeVetter          January 20, 2015
           Official Court Reporter              Date

25